THOMPSON NEWBURY *vs.* BAY STATE SCREW COMPANY.

A. agreed to assign to a company all patents which he then had or might obtain for certain improvements within fourteen years, in consideration of which the company promised to pay him a certain annual commission for the like term, provided they should continue to use his improvements so long. The company afterwards desired to unite with another company, and voted to pay to A. a certain sum "whenever our proposed arrangement [with the other company] is consummated; in consideration of which sum A. agrees to annul his contract with us," &c. An agreement for the union was thereupon made, but the company continued to carry on business and to use A.'s improvements for several months, and until the arrangement and union were consummated. The sum which was voted was thereupon paid to him, and in consideration thereof his agreement with the company was annulled. *Held*, that he could not afterwards maintain an action for the commissions for the use of his patents for the time between the agreement for and the consummation of the union between the two companies.

CONTRACT to recover commissions from the 31st of May to the 27th of December, under the following agreement executed between the plaintiff and the defendants, on the 17th of December 1855:

" This agreement between Thompson Newbury, of Taunton, in the county of Bristol, and the Bay State Screw Company, a corporation located at said Taunton, witnesseth, that said Newbury is to continue in the employ of said company for the term of five years from the first day of June eighteen hundred and fifty-five, as manufacturing and general agent of said company, and to perform all the duties usually devolving upon such agents with fidelity and according to his best skill and judgment. The said Newbury also agrees to assign to said company any and

all patent rights he now has or may have or obtain during the term of fourteen years from the first day of June, eighteen hundred and fifty-five, for improvements in making screws, rivets, bolts and other like articles, for the whole territory of the United States of America. And the said company agree to pay said Newbury, in consideration of the fulfilment of said agreement by him to serve the company as their agent as aforesaid, should the said company continue the business so long, the following salary: For the first three years from the first of June last, three thousand dollars a year, and for the last two years thirty-six hundred dollars a year, payable quarterly. And in consideration of the assignment of said patents, said company agrees to pay to said Newbury or his heirs the following annual commission for the term of fourteen years from the first day of June last, should the company continue to use said Newbury's improvements so long, viz : A commission of fifteen per cent. upon the net profits of said company for each year that their net profits as determined by them do not exceed twenty-five per cent. upon their capital stock; and for each year that said net profits exceed twenty-five per cent. upon the capital stock a commission of twenty per cent. upon said net profits, provided that the commissions for any one year do not exceed ten thousand dollars. And the said company agree that if they should decide to sell any of said patent rights, they will pay to said Newbury, or to his heirs, one half of the amount received for the same."

At the trial in this court, before *Merrick,* J., it appeared that the plaintiff was one of the directors of the defendant corporation, and that, an arrangement having been proposed for a union between the defendants and the American Screw Company, by which the latter were to purchase all the shares of the stockholders of the defendants, and thenceforth to have the entire management and control of all its business, property, rights and effects of every kind, a committee of the directors of the defendants, appointed for the purpose of this consolidation, passed the following votes on the 7th of July 1860:

"*Voted,* That we pay Thompson Newbury the sum of twenty-five thousand dollars whenever our proposed arrangement with

the American Screw Company is consummated. In considera-tion of which sum Mr. Newbury agrees to annul his contract with us, and to give up all his rights in patents for screw ma-chinery now owned by us, and to give us the right to use any other machinery now used by us, and also to procure patents at our expense for any improvements in screw or other machinery now used by us not now secured by patents, and which we may deem worthy to be so secured.

" *Voted*, That we deem it expedient and desirable for the company to consolidate with the American Screw Company of Providence.

" *Voted*, That Mr. Newbury be appointed by this committee to consult with Mr. Angell on the subject of a union, and to report."

This arrangement was agreed upon and consented to by all the parties in interest, with the plaintiff's approbation, on the 12th of July 1860 ; but the agreement was not consummated and the actual union did not take place until the 27th of December 1860. In the mean time the business of the defendants went on as before. On said 27th of December, the defendants paid to the plaintiff the sum of twenty-five thousand dollars, according to the terms and for the purposes mentioned in the votes of July 7th ; and it was conceded by the plaintiff that he accepted this sum as a consideration for annulling his agreement with the de-fendants, and that the same upon his acceptance of said pay-ment became and was thereby annulled. The plaintiff also admitted that a full settlement had been made by the defend-ants of all other claims by him under the agreement, before and up to June 1st 1860, and also for his personal services rendered after that date.

Upon these facts, the judge ruled that the plaintiff was not entitled to recover, and a verdict was accordingly returned for the defendants ; and the case was reported for the determina-tion of the whole court.

*C. I. Reed*, for the plaintiff. The plaintiff could not have been compelled to annul his contract before the consummation of the union between the two companies. Until that event the

business was to go on as before.   But this consummation might not have taken place for years.   It certainly is not to be presumed that the plaintiff would agree to waive his commissions during that interval.   The defendants might as well have refused to pay for his subsequent services.   Supposing that his commissions for the preceding year had not been paid; could he not have collected them ?   If the construction contended for by the defendants had been contemplated by the parties, there would have been a provision for interest.

*E. H. Bennett,* for the defendants, cited *Allcott* v. *Boston Steam Flour Mill Co.* 9 Cush. 376.

CHAPMAN, J.   The plaintiff declares upon a contract by which he agreed to labor for the defendants for a certain term, and to assign to them certain patents.   No question is made in respect to the labor, it having been performed and paid for.   In consideration of the assignment of the patents, they agreed to pay him " an annual commission for the term of fourteen years from the first day of June last, should the company continue to use the said Newbury's improvements so long," stating the rate.   The term commenced June 1st 1855.   The plaintiff was one of the directors of the company; and by an arrangement made with his consent, and partly through his agency, the company agreed to sell out its property to the American Screw Company, of Providence.   As a part of the arrangement, the vote recited in the report was passed by the defendants on the 7th of July 1860.

On the 12th of July 1860 the two companies completed their written agreement for the transfer, which was to include the shares of the stockholders in the Bay State Screw Company. The assignment of property was not completed till December 27th 1860, and in the mean time the business of the defendants went on as before.   On that day the plaintiff received the twenty-five thousand dollars, and it is admitted that he accepted it as a consideration for annulling his agreement, and that the same, upon his acceptance of said payment, became and was thereby annulled.

Nothing can be plainer, as elementary law, than that when

an agreement has been annulled no action lies to enforce it. But the plaintiff contends that he is entitled to recover because the defendants, after having paid him his annual commission for the year ending June 1st 1860, continued to use his patents until December 27th, for which they have paid him no commissions. The answer to this claim is, that when he on that day accepted the sum offered to him by the vote of July 7th, as a consideration for annulling the contract, it was in his power, by his construction of the agreement, to refuse to accept the terms offered, unless they would also pay him commissions up to that time. He did not see fit to demand this, but accepted the offer they made him without any qualification. By annulling the agreement, all claims under it were annulled; and the sum of $25,000 was all that he demanded for doing this.

This objection being fatal to the action, it is not necessary to consider the other points that have been argued.

*Judgment for the defendants.*